**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**JOE HAND PROMOTIONS, INC.,**

                            **Plaintiff,**             **REPORT AND**
                                        **RECOMMENDATION**

       **-against-**

**BRENDA C. ROSERO, et al.,**                     **19-CV-792 (KAM)**

                            **Defendants.**
-----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Joe Hand Promotions, Inc. ("plaintiff") commenced this action against Brenda C. Rosero ("Rosero"), individually and as officer, director, shareholder and/or principal of Victor Bar & Restaurant, Inc., d/b/a Victor's Bar & Restaurant, as well as against Victor Bar & Restaurant, Inc., d/b/a Victor's Bar & Restaurant ("Victor's Bar & Restaurant") (collectively, "defendants"), charging both with violations of the Communications Act of 1934, 47 U.S.C. §§ 553 and 605 et seq., and of the Copyright Act, 17 U.S.C. § 101 et seq.   See generally Complaint (Feb. 8, 2019) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1.

Plaintiff's Complaint alleges that on August 26, 2017, defendants illegally intercepted plaintiff's scrambled satellite transmission of the "Mayweather vs. McGregor Match" (the "Event") and exhibited it for their own commercial advantage or private financial gain.   See id. ¶¶ 6, 23.   Although properly served, see Summons Returned Executed (Feb. 26, 2019), DE #8; Summons Returned Executed (Feb. 26, 2019), DE #9, defendants never answered or otherwise appeared in this action and, on April 18, 2019, their default was noted, see Clerk's Entry of Default (Apr. 18, 2019), DE #12.   On May 20, 2019, plaintiff filed a Motion for Default Judgment against both defendants, see Motion for Default Judgment (May 20, 2019) ("Pl.

Mot."), DE #14, which the Honorable Kiyo A. Matsumoto referred to the undersigned magistrate judge on October 17, 2019 for a Report and Recommendation, see Order Referring Motion (Oct. 17, 2019).

For the reasons that follow, this Court recommends that plaintiff be awarded damages in the amount of $3,700 for its Communications Act claims, $3,000 for its Copyright Act claim, litigation costs in the amount of $460.00, and post-judgment interest, against defendant Victor's Bar & Restaurant, but that plaintiff's request for relief against defendant Rosero be denied, and that the claims against her be dismissed with prejudice.

## BACKGROUND

According to plaintiff's uncontested factual assertions, plaintiff is a Pennsylvania corporation that was granted the exclusive rights of distribution and public performance of the Event within commercial establishments.   See Compl. ¶¶ 5-6.   Plaintiff then entered into licensing agreements with various entities in the State of New York by which plaintiff allowed these entities to publicly exhibit the Event to their patrons within their commercial establishments.   See id. ¶ 20; see also List of Broadcast Locations (May 20, 2019), DE #14-2 (Ex. B).   The transmission of the Event was scrambled and unavailable to the general public without payment of the appropriate fees; with payment, plaintiff authorized and allowed customers to decrypt, unscramble, and receive the closed circuit, "IPTV," cable or satellite broadcast.   See Compl. ¶¶ 20-22.[1]

---

[1] The Complaint explains that the Event was "available for non-commercial, private viewing through [p]laintiff or its authorized online platforms for residential Pay-Per-View purchase and consumption via the internet[,]" but that a commercial establishment wishing to avoid paying licensing fees could improperly gain access to the Event by purchasing the program online, without proper authorization and at the discounted residential rate.   See Compl. ¶ 21.   However, any purchaser who obtained the Event through a website intended for non-commercial viewing "would be provided with terms of service which

Plaintiff alleges that Victor's Bar & Restaurant is a business entity, the exact nature of which is unknown, located at 6701 Forest Avenue, Ridgewood, New York 11385.   See id. ¶ 16. Plaintiff also pleads that Rosero, who resides in New York, had the supervisory capacity and control over the activities occurring within the establishment on August 26, 2017.   See id. ¶¶ 7, 9.   Plaintiff proffers two affidavits from its investigator, James Emery, attesting to an unauthorized screening of the Event at Victor's Bar & Restaurant on August 26, 2017.   See Affidavit of James Emery (May 20, 2019) ("Emery Aff."), DE #14-2 (reproduced at ECF pp. 17-18); see also Supplemental Affidavit of James Emery (May 20, 2019) ("Emery Supp. Aff."), DE #14-2 (reproduced at ECF p. 19).   According to Emery, he entered Victor's Bar & Restaurant on the night of August 26, 2017 at approximately 10:17 p.m.   Emery Aff. at ECF p. 17.   While there, he observed a "[b]ar located on [the] right" side of the establishment, with "[t]ables and chairs scattered throughout, [and the] kitchen located at the left end of the [b]ar."   Id. at ECF p. 18.   Emery also saw three television sets in the establishment, "2 TV's [sic] on the wall behind the bar, and 1 TV on the back wall."   Id. at ECF p. 17.   He observed the first round of the undercard match between the fighters Cleverly and Jack during the three minutes that he was on the premises.   See id.   While there, Emery counted approximately 15 people in Victor's Bar & Restaurant, although his affidavit does not specify where these individuals were located within the establishment.   See id.   Although Emery was unable to view the fire code occupancy, he checked the box that estimated the capacity of the establishment to be no more than 50 people. See id. at ECF p. 18.   Emery did not pay a cover charge to enter Victor's Bar & Restaurant, and his affidavit does not state whether he purchased any food or drink while there.   See id. at ECF

---

specifically provide for non-commercial, personal use only."   Id. ¶ 22 (emphasis omitted).

pp. 17-18.   Emery fails to address whether he observed any employees in the establishment, including Rosero.   See id.

Emery's supplemental affidavit, dated March 19, 2019, avers that he recorded a video and still photographs of the interior and exterior of the establishment, including depictions of a television and the décor.   See Emery Supp. Aff. at ECF p. 19.   Submitted with plaintiff's motion papers are three photos from the night the Event was broadcast.   See Emery Photos (May 20, 2014), DE #14-2 at ECF pp. 20-22.   Two of those images are of the establishment's awning, and display part or all of the name and/or address of Victor's Bar & Restaurant.   See id. at ECF pp. 20, 22.   The remaining photo appears to shows the inside of the establishment on August 26, 2017, including a wall-mounted television displaying a boxing match.   See id. at ECF p. 21.[2]   This Court has also been provided with a video approximately 2.5 minutes in length, purportedly taken by Emery on August 26, 2017, see Emery Supp. Aff. at ECF p. 19, which seems to verify much of the information set forth in Emery's affidavit, see Video (Feb. 5, 2020), DE #20 (CD-ROM submitted with cover letter).   The video, which lacks sound, appears to be the source from which the three photos were generated.   See id.   The video shows multiple televisions inside the establishment, two of which were displaying a boxing match. See id.   Present in the establishment are at least two people behind the bar and approximately a dozen others.   See id.   Some patrons appear to be observing the Event, while others are not. See id.

Plaintiff contends that defendants did not enter into a licensing agreement to publicly

---

[2]  Although the display on the television screen appears blurry, the Court notes the following details: two fighters in the ring – one in light-colored shorts and the other in dark shorts – and a timer at the bottom right of the screen displaying "1:57."   See Emery Photos at ECF p. 21.

exhibit the Event to their patrons on August 26, 2017, but rather, intercepted the transmission and screened the Event for the purposes of direct or indirect commercial advantage or private financial gain.  See Compl. ¶¶ 23-24.

## DISCUSSION

### I.    Default Judgment Standard

Following the Clerk's notation of a defendant's default, entry of a default judgment is appropriate provided the pleading properly states a claim upon which relief can be granted.  See, e.g., Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Hearing Corp., No. 08-CV-116 (FB)(MA), 2009 WL 234348, at *1 (E.D.N.Y. Jan. 30, 2009).  If the allegations properly state a claim, the plaintiff must then establish damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  "A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages."  Axiom Plumbing, 2009 WL 234348, at *1 (citing Greyhound, 973 F.2d at 158).

### II.    Liability

#### A. Plaintiff's Claims Under the Communications Act

As a preliminary matter, although plaintiff's Complaint alleges that defendants violated both 47 U.S.C. §§ 605 and 553 of the Communications Act, and plaintiff seeks damages under both, see Compl. *ad damnum* ¶¶ (b)-(c), "when a defendant's conduct has violated both [s]ections 553 and 603, an aggrieved cable operator is entitled to only one, non-duplicative recovery."  J & J Sports Prods., Inc. v. His & Hers Bar & Lounge, CV 17-4181 (ADS)(GRB), 2018 WL 4925706, at *3 (E.D.N.Y. Aug. 31, 2018) (quoting J & J Sports Prods., Inc. v. Alvarez, No. 07 Civ. 8852(RPP)(HBP), 2009 WL 3096074, at *4 (S.D.N.Y. Sept. 25, 2009)), adopted,

2018 WL 4922912 (E.D.N.Y. Oct. 9, 2018); see also Joe Hand Promotions, Inc. v. Wall Street Rest., LLC, No. 14-CV-4267 (ENV)(RLM), 2015 WL 2084637, at *2 (E.D.N.Y. May 4, 2015) (citing cases).   Thus, "where the defendant's liability can be established under both sections, the Second Circuit has made clear that the court should award damages pursuant to section 605." His & Hers Bar, 2018 WL 4925706, at *3 (citing cases).

Accordingly, this Court must first address whether plaintiff's Complaint states a cause of action against defendants under 47 U.S.C. § 605(a).   Section 605 was enacted as part of the Cable Communications Policy Act of 1984, which amended the Communications Act of 1934, 47 U.S.C. § 151 et seq.   Section 605(a) provides, in pertinent part, that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person.

47 U.S.C. § 605.

Section 605(a) "has been held to apply to the interception of cable communications originating as a satellite or radio transmission." J & J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc., 17 CV 2196 (ARR), 2018 WL 2078482, at *3 (E.D.N.Y. Feb. 27, 2018) (citing cases), adopted, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018).   The Complaint in this case alleges that the Event "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal." Compl. ¶ 19.   Courts in this Circuit have held that where, as here, "at least part of the Event's transmission was accomplished by satellite, the defendants' interception of the Event violates [section] 605(a)." Alvarez, 2009 WL 3096074, at *4 (citations omitted); see also Garden City Boxing Club, Inc. v. Conway, No. 06 Civ. 3145(BSJ)(HBP), 2009 WL 125434, at *3 (S.D.N.Y. Jan. 20, 2009); cf. Cmty. Tel. Sys.,

Inc. v. Caruso, 284 F.3d 430, 434-35 (2d Cir. 2002) (noting disagreement with this view in two other Circuits).   Because plaintiff's Complaint alleges that defendants intercepted, received and/or de-scrambled the Event willfully and without authorization, see Compl. ¶¶ 23-24; see also Plaintiff's Motion for Default Judgment with Supporting Memorandum of Law (May 20, 2019) ("Pl. Mem.") at 2-3, DE #14-5, plaintiff adequately alleges a violation of section 605(a), and this Court need not evaluate plaintiff's claims under section 553.

**B.  Plaintiff's Claim Under the Copyright Act**

The allegations set forth in plaintiff's Complaint also state a valid claim for copyright infringement.   Section 106 of the Act gives owners of a copyright the "exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]"   17 U.S.C. § 106; see also Premium Sports, Inc. v. Mendes, 17 CV 1309 (PKC) (CLP), 2018 WL 2078488, at *4 (E.D.N.Y. Mar. 1, 2018) (citing the same), adopted, Order by Pamela K. Chen Adopting Report and Recommendation (E.D.N.Y. Mar. 16, 2018).   "Under the Act, '[a]nyone who violates any of the exclusive rights of the copyright owner as provided by section 106 through 122 . . . is an infringer of the copyright or right of the author, as the case may be."   Mendes, 2018 WL 2078488, at *4 (citation omitted).   A plaintiff must prove two elements in order to establishment copyright infringement: first, the ownership of a valid copyright, and second, the copying of constituent elements of the work that are original.   See Joe Hand Promotions, Inc. v. Maupin, 2:15-cv-06355 (ADS)(AKT), 2018 WL 2417840, at *4 (E.D.N.Y. May 25, 2018) (citing Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir.

2010)).

Here, plaintiff alleges that it is "the copyright owner of the exclusive rights of distribution and public performance as to commercial establishments to the [Event]," Compl. ¶ 38, and without "obtain[ing] the proper authority or license from [p]laintiff to publicly exhibit" the Event, id. ¶ 40, defendants "publicly displayed the [Event]" on August 26, 2017, id. ¶ 41.   In the default judgment context, the Court accepts such allegations as true.   See Joe Hand Promotions, Inc. v. Levin, 18-CV-9389 (JPO), 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019).   With respect to the validity of the copyright, plaintiff has also presented a valid Certificate of Registration, issued by the U.S. Copyright Office, bearing registration number PA-066-333 and listing an effective date of registration as of October 26, 2017.   See Certificate of Registration (Feb. 5, 2020), DE #20-1.[3]   This Certificate of Registration constitutes prima facie evidence of the validity of the copyright and of the facts stated in the Certificate.   See Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 908 (2d Cir. 1980) (citing 17 U.S.C. § 410(c)).[4]

---

[3] In response to an order of this Court, see Electronic Order (Feb. 11, 2020) ("2/11/20 Electronic Order"), plaintiff has also provided a contract, dated November 21, 2017, between plaintiff and Showtime Networks Inc., the copyright claimant listed on the Certificate of Registration, see Agreement, DE #21-1. That agreement is signed, in pertinent part, by representatives of Showtime Networks Inc. and Joe Hand Promotions, Inc., and verifies that plaintiff has the right to enforce and initiate legal proceedings in plaintiff's name for copyright infringement or violations of the Communications Act.   See id. at 1; see also Alexander Lonstein Affirmation (Feb. 12, 2020) ("Lonstein Aff.") ¶ 3, DE #21 ("[T]he contract between Showtime Networks Inc., and Joe Hand Promotions, Inc. dated November 21, 2017, verif[ies] the assignment of rights.").

[4] According to the Copyright Act of 1976, a certificate of registration must be made "before or within five years after publication of the [registered] work" in order to be entitled to the statutory presumption of validity.   See 17 U.S.C. § 410(c).   Here, the effective date of registration (October 26, 2017) postdates the date of Event by two months (August 26, 2017).   Accordingly, plaintiff's Certificate qualifies as prima facie evidence of the certificate holder's copyright ownership.

     That said, this presumption of validity is not irrebuttable; rather, "[t]he presentation of a certificate of registration by plaintiff merely 'shifts the burden of proof to [d]efendant[] to show the invalidity of [p]laintiff's copyrights.'"   Mendes, 2018 WL 2078488, at *5 (citations and internal quotation marks omitted).   Having defaulted, defendants have failed to rebut that presumption.

Regarding the originality element of copyright infringement, "when there exists prima facie validity of [p]laintiff's copyright, the burden of proof shifts to the [d]efendant to show [p]laintiff's work is not original." Mendes, 2018 WL 2078488, at *5 (citation and internal quotation marks omitted). In light of their default, defendants have not rebutted the presumption of validity that attaches with plaintiff's filing of a valid Certificate of Registration, nor have they shown that plaintiff's work is not original. Therefore, based on the allegations set forth in plaintiff's Complaint, this Court finds that plaintiff has established liability with respect to its copyright infringement claim.

## C. Liability of the Corporate Defendant and Individual Defendant

### 1. Corporate Defendant

Plaintiff alleges that Victor Bar & Restaurant, Inc., doing business as Victor's Bar & Restaurant, "is domestic corporation that was formed and is licensed to do business in the State of New York" and has "its principal place of business at 6701 Forest Avenue, Ridgewood, NY 11385." Compl. ¶¶ 16-17. Courts may take judicial notice of entries in the New York State Department of State ("NYSDOS") Corporation and Business Entities Database in determining a corporate defendant's status and location. See J & J Sports Prods., Inc. v. Gomez, 18-cv-5199 (KAM)(CLP), 2019 WL 4744229, at *5 (E.D.N.Y. Sept. 29, 2019) (Matsumoto, J.) (citing cases). Here, the Court takes judicial notice of an entry in the NYSDOS Corporation and Business Entity Database that classifies "Victor Bar & Restaurant Inc." as an active domestic business corporation located at 6701 Forest Avenue, Ridgewood, New York, 11385, with documents first filed with the NYSDOS on July 11, 2014. See Corporation and Business Database, New York Department of State, Division of Corporations,

9

http://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY (search "Victor Bar") (current as of February 13, 2020).   The Court is therefore persuaded that Victor's Bar & Restaurant is the proper corporate defendant.

Further, courts in the Eastern District of New York have held that a plaintiff's "well-pleaded allegations state a valid claim against [an entity defendant] under § 605(a) of the FCA" when, as is the case here, the plaintiff pleads that (1) the plaintiff holds an exclusive license to broadcast the Event at issue (see Compl. ¶ 6); (2) the entity defendant had no right to commercially broadcast the transmission unless it contracted with the plaintiff through a licensing agreement (see id. ¶¶ 20, 22); and (3) the entity defendant screened the program despite failing to contract with the plaintiff for authority to do so (see id. ¶ 23).   See, e.g., J & J Sports Prods., Inc. v. Inga, 18-CV-2542 (PKC) (RLM), 2019 WL 1320278, at *4 (E.D.N.Y. Mar. 22, 2019) (citing cases).   Because plaintiff has sufficiently pled facts to state a valid claim against Victor's Bar & Restaurant, this Court respectfully recommends that the corporate defendant be held liable under section 605 of the Cable Communications Policy Act and under section 106 of the Copyright Act.

## 2.  Individual Defendant

Without identifying the legal theory upon which it relies, plaintiff's Complaint also seeks to hold individual defendant Rosero liable for violations of 47 U.S.C. §§ 553 and 605, as well as 17 U.S.C. § 504.   See Compl. ¶¶ 7-14.   The Supreme Court has found that a "formulaic recitation of the elements of a cause of action" is insufficient to establish liability, even on default; rather, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face," which requires that the plaintiff plead "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted); see also J & J Sports Prods., Inc. v. Paucar, 17 Civ. 055358 (RJD) (VMS), 2018 WL 4501057, at *6 (E.D.N.Y. July 16, 2018) (noting the application of Iqbal in a default judgment analysis), adopted, 2018 WL 4495874 (E.D.N.Y. Sept. 19, 2018). Here, while the Complaint asserts that Rosero, as an "officer, director, shareholder and/or principal of Victor Bar & Restaurant Inc. d/b/a Victor's Bar & Restaurant . . . was the individual with supervisory capacity and control over the activities occurring within the Establishment on August 26, 2017[,]" Compl. ¶¶ 8-9, plaintiff has proffered no factual basis to support that conclusory assertion.[5]

More specifically, plaintiff's allegation that Rosero had the ability to supervise the activities of Victor's Bar & Restaurant "fail[s] to identify any actions the [i]ndividual [d]efendant[] took, and do[es] not permit the Court to infer that [defendant Rosero was] positioned to supervise the infringing broadcast, or directly participated in, authorized, or ha[d] knowledge of the violation." J & J Sports Prods., Inc. v. Classico Bar Inc., 16-CV-5639 (ADS)(SIL), 2018 WL 2022166, at *3 (E.D.N.Y. Feb. 13, 2018) (citation and internal quotation marks omitted), adopted, 2018 WL 1168582 (E.D.N.Y. Mar. 6, 2018). While the Complaint states that defendant Rosero "was the individual with close control over the internal operating procedures and employment practices" of the establishment and "was present at the [e]stablishment during the exhibition of the [Event]," Compl. ¶¶ 11-12, neither the pleading nor

---

[5] The NYSDOS Corporations and Business Entities Database does not list Rosero as a registered agent or otherwise reference her as somehow affiliated with the entity. See Corporation and Business Database, New York Department of State, Division of Corporations, https://appext20.dos.ny.gov/corp-public/CORPSEARCH.ENTITY_SEARCH_ENTRY (search "Victor Bar") (current as of February 13, 2020).

plaintiff's motion papers support these conclusory allegations with additional facts to show that Rosero should be held liable for Victor's Bar & Restaurant's allegedly illegal conduct.   See, e.g., Gomez, 2019 WL 4744229, at *6-7 (holding that a complaint with language similar to that in the case at hand did not plead sufficient facts to sustain a finding of individual liability); Inga, 2019 WL 1320278, at *5-6 (holding, in a case involving a complaint with factual allegations comparable to those in the instant case, that the allegations were insufficiently pled to establish liability on the part of the individual defendants); see also J & J Sports Prods., Inc. v. Emily Bar Rest. Inc., 15-CV-6499 (RJD), 2016 WL 6495366, at *2 & n.2 (E.D.N.Y. Sept. 27, 2016) (opining that the complaint was insufficiently pled where the individual defendant's purported right and ability to supervise the infringing activities were based solely on her status as an officer, director, and principal of the establishment), adopted, 2016 WL 6495526 (E.D.N.Y. Nov. 2, 2016).   Simply put, the weight of authority in this Circuit requires "more than a formulaic recitation that the individual defendants exercised control over the subject premises."   Classico Bar, 2018 WL 1168582, at *3 (citing cases).

    In any event, even if the Complaint were held to sufficiently allege that Rosero had "supervisory capacity and control" over Victor's Bar & Restaurant on the night in question, the pleading and plaintiff's other submissions fail to satisfy the second prong of the vicarious liability test – i.e., that Rosero had an "obvious and direct financial interest" in the infringement. See J & J Sports Prods., Inc. v. La Parranda Mexican Bar & Restaurante Co., Inc., 18-CV-2622 (NGG) (RLM), 2018 WL 6716095, at *3-4 (E.D.N.Y. Dec. 21, 2018); J & J Sports Prods., Inc. v. Mar Y Las Estrellas Rest. Corp., 17-CV-1190 (MKB) (ST), 2018 WL 4583489, at *4-5 (E.D.N.Y. Sept. 25, 2018) (holding that the plaintiff failed to provide sufficient allegations and

evidence to warrant recovery against the individual defendant); see also Classico Bar, 2018 WL 2022166, at *3-4 (finding plaintiff's complaint to be inadequate on similar grounds).   As an initial matter, the pleading herein does not contain allegations of a cover charge or premium surcharge on food or beverages, nor does it specify whether Victor's Bar & Restaurant sold food or drinks (alcoholic or non-alcoholic) during the hours in which the establishment broadcast the Event.   See J & J Sports Prods., Inc. v. LX Food Grocery Inc., 15-CV-6506 (NGG) (PK), 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016) ("Plaintiff's auditor counted the number of patrons present during the Event . . . , but did not specify whether those patrons made any purchases.").   Nor does the record provide any basis to believe that Rosero was present during the unauthorized exhibition.   Cf. Joe Hand Promotions, Inc. v. Bernal, 18-CV-85 (ILG) (SJB), 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019) (finding that individual defendant, who "was present during the exhibitions," authorized the interceptions).   Moreover, plaintiff has not established whether the approximately 15 individuals in the establishment at the time of the Event exceeded the number of patrons regularly present at Victor's Bar & Restaurant.   See Classico Bar, 2018 WL 2022166, at *3 ("Plaintiff does not distinguish the presence of the twenty-five or so viewers from the regular presence of patrons at [the establishment] on a similar night").   As the Court is thus "unable to draw any inferences as to whether people present for the broadcast of the [fight] would be required or expected to make any purchases[,] . . . [p]laintiff has not satisfied its burden of showing the 'obvious and direct financial interest' required to establish vicarious liability" on Rosero's part.   LX Food Grocery, 2016 WL 6905946, at *3.

Accordingly, as plaintiff has not satisfied its burden to establish Rosero's contributory infringement or vicarious liability, this Court respectfully recommends that Rosero not be held

individually liable and that the claims against her be dismissed.[6]

## III.    Damages

The Court next addresses the appropriate measure of damages to award plaintiff.

Although a defendant, by defaulting, admits to all well-pleaded allegations pertaining to liability,

the plaintiff nevertheless must provide evidence to substantiate its request for damages; it is

within the Courts' discretion to determine whether that burden has been met.   See, e.g.,

Greyhound, 973 F.2d at 158; Innovative Sports Mktg., Inc. v. Aquarius Fuente De Soda, No. 07-

CV-2561 (ENV)(CLP), 2009 WL 3173968, at *6 (E.D.N.Y. Sept. 30, 2009).

### A.  Communications Act

#### 1.  Statutory Damages

Plaintiff seeks to recover $10,000 in statutory damages from the remaining defendant

pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), see Pl. Mot. at 2; Pl. Mem. at 12, 26, which provides

for awards ranging from $1,000 to $10,000, "as the court considers just."   47 U.S.C. §

605(e)(3)(C)(i)(II).   "When determining statutory damages under section 605, courts generally

choose between two methods of calculations – a per-customer damage calculation or a flat-sum

award."   Kingvision Pay-Per-View Ltd. v. Zalazar, 653 F.Supp.2d 335, 340 (S.D.N.Y. 2009).

The first approach involves a formula that multiplies a dollar amount per customer by the

number of patrons alleged to be present during the unauthorized exhibition.   See id. at 340-41

(collecting cases awarding between $50.00 and $300.00 per patron).   On the other hand, "[t]he

---

[6] In Mar Y Las Estrellas Restaurant, Judge Margo K. Brodie dismissed the Communications Act claims against the individual defendant but granted plaintiff leave to amend the complaint as to that defendant. See 2018 WL 4583489, at *5.   Here, having been put on notice of the inadequacy of its pleadings based on the myriad of cases in this District (including Mar Y Las Estrellas) that address this issue, see supra, Part II.C.2, plaintiff should not be afforded an opportunity to cure the deficiencies of which it was or should have been aware.

flat-sum approach is typically used when the exact number of patrons who observed the unauthorized programming is unknown." Id. at 340.

Courts using the per-customer formula often multiply the number of patrons by the residential (non-commercial) fee charged to view the program, in order to compensate the plaintiff for its presumed lost revenues. See generally id. at 341 (collecting cases). Here, however, the record is silent as to the residential purchase price to view the Event, rendering the per-patron method inappropriate. See Bernal, 2019 WL 885930, at *4 (opining that the onus falls on the plaintiff to establish the actual fee for viewing the intercepted program if it wishes to pursue the per-patron damage calculation, and holding that, absent such a showing, the flat-fee method is the appropriate approach in awarding damages). The Court therefore applies the "flat-sum" approach in this case, and concludes that plaintiff is entitled to $3,700 in statutory damages, reflecting the amount that, according to plaintiff, Victor's Bar & Restaurant would have been charged as a commercial licensing fee to broadcast the Event. See Rate Card (May 20, 2019), DE #14-2 at p. 1 (Ex. A).

In support of its demand for $10,000 in statutory damages, plaintiff cites to J & J Sports Prods., Inc. v. Welch, No. 10-CV-0159 (KAM), 2010 WL 4683744, at *5 (E.D.N.Y. Nov. 10, 2010) (Matsumoto, J.), noting that Judge Matsumoto "previously held in a similar case that two (2) times the amount of basic statutory damages is appropriate in order to deter future violations under § 605." Pl. Mem at 14. That opinion, however, is almost ten years old, and does not account for recent trends in the case law involving similar facts, including decisions by Judge Matsumoto within the past year.[7] For instance, this Court has identified two 2019 decisions

---

[7] Welch is also distinguishable on other grounds. In that case, the investigator observed 85 individuals
[footnote continued]

authored by Judge Matsumoto in which she declined to award statutory damages in excess of the amount of the commercial fee.  See, e.g., Gomez, 2019 WL 4744229, at *9-10 (Matsumoto, J.) (awarding $2,000 in statutory damages – the amount plaintiff would have received had defendant paid the sublicense fee and lawfully streamed the program); J & J v. Sports Prods., Inc v. Orellana, 18-CV-2052(KAM)(VMS), 2019 WL 1177719, at *5 (E.D.N.Y. Mar. 13, 2019) (Matsumoto, J.) (holding that an award of statutory damages equivalent to the sublicensing fee of $3,000 was consistent with Second Circuit case law).[8]  Accordingly, the Court respectfully recommends that the District Court impose, pursuant to its discretionary authority, statutory damages totaling $3,700.

## 2. Enhanced Damages

Plaintiff also seeks to recover $20,000 in "enhanced damages" from Victor's Bar & Restaurant under section 605(e)(3)(C)(ii), see Pl. Mot. at 2; Pl. Mem. at 16-17, 26, which permits the Court to increase an award by up to $100,000 "[i]n any case in which the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage of private financial gain[,]"  47 U.S.C. § 605(e)(3)(C)(ii).   A presumption of willfulness arises when a program is broadcast without authorization, as was the case here.  See J & J Sports Prods., Inc. v. Morocho, 18 CV 2303 (AMD)(RLM), 2019 WL 1339198, at *6

---

present at the establishment during the broadcast of the event.  See Welch, 2019 WL 4683744, at *1, *4. By contrast, the investigator's affidavit here states that the investigator saw only approximately 15 persons present during the three minutes he was at Victor's Bar & Restaurant.  See Emery Aff. at ECF p. 17.

[8] This trend is also reflected in decisions by other judges in this District.  See Inga, 2019 WL 1320278, at *6 (declining to award the plaintiff $9,000, or three times the licensing fee); see also J & J Sports Prods., Inc. v. Reynolds, 18-CV-2540 (FB) (ST), 2019 WL 1299408, at *3 & n.3 (E.D.N.Y. Jan. 11, 2019) (awarding $3,000 and declining to treble the commercial sublicense fee), adopted, 2019 WL 1299665 (E.D.N.Y. Mar. 21, 2019).

(E.D.N.Y. Feb. 27, 2019) ("The fact that [the defendant] broadcast the [p]rogram without authorization establishes the willfulness of its conduct."), adopted, 2019 WL 1333245 (E.D.N.Y. Mar. 25, 2019).  To determine whether enhanced damages are warranted, "courts have considered various factors, including 'repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the [program]; defendant's charging a cover charge or charging premiums for food and drinks.'"  J & J Sports Prods., Inc. v. Martinez, No. 07-cv-3455-ENV-RER, 2009 WL 1913239, at *3 (E.D.N.Y. June 30, 2009) (citing Kingsvision Pay-Per View, Ltd. v. Recio, No. 02 Civ. 6583(JSM)RLE, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003)); see His & Hers Bar, 2018 WL 4925706, at *8.

  Here, the only evidence proffered by plaintiff with respect to these factors is that plaintiff would have charged Victor's Bar & Restaurant a licensing fee for the right to exhibit the Event, and that Victor's Bar & Restaurant could not have received the broadcast signal without actively attempting to circumvent the access restrictions imposed.  See Compl. ¶¶ 20, 25.  In addition, based on the investigator's initial affidavit, it appears that Victor's Bar & Restaurant imposed neither a cover charge nor a food and drink minimum.  See Emery Aff. at ECF pp. 17-18.

  In similar circumstances, "judges in this district have taken varying approaches to the calculation of enhanced damages."  His & Hers Bar, 2018 WL 4925706, at *8 (citing J & J Sports Prods., Inc. v. Morleys Tavern, Inc., No. 13 CV 5211(RRM), 2014 WL 4065096, at *8 (E.D.N.Y. May 9, 2014) (citing cases), adopted, 2014 WL 4075162 (E.D.N.Y. Aug. 15, 2014)). While some courts have awarded no statutory damages, see, e.g., Mar Y Las Estrellas Rest., 2018 WL 4583489, at *7, others have included an amount "equal to the amount of actual

damages, or even double or triple that amount," His & Hers Bar, 2018 WL 4925706, at *8 (collecting cases).   In making its recommendation, this Court is guided by Judge Matsumoto's 2019 decision in Gomez.   There, the District Court adopted, in pertinent part, a report and recommendation that found plaintiff was not entitled to enhanced statutory damages under 47 U.S.C. § 605(e)(3)(C)(ii).   See Gomez, 2019 WL 4744229, at *11.   Judge Matsumoto applied the aforementioned factors, concluding that enhanced statutory damages were not warranted because (1) the plaintiff provided no evidence of repeat violations; (2) the plaintiff provided no evidence of actual damages and, "[t]o the extent [the] [d]efendant's failure to pay for a license constitutes 'actual damages,' that cost is already factored into [the] [p]laintiff's statutory damages award"; (3) the plaintiff provided no evidence of substantial unlawful monetary gains; (4) the plaintiff provided no evidence that the defendant advertised the event; and (5) the plaintiff provided no evidence of any cover charge or premiums charged for any goods or services.   Id. (citation omitted).

So too here, the record affords no reason to believe that Victor's Bar & Restaurant repeatedly violated the Communications Act, no evidence of actual damages, and no evidence that defendant received substantial unlawful monetary gains or advertised the event.   Plaintiff's investigator's affidavit also states he was not charged a cover to enter the establishment, see Emery Aff. at ECF p. 17, and plaintiff proffers no evidence of a premium for food or drinks. Accordingly, this Court respectfully recommends that the District Court decline to award enhanced statutory damages under the Communications Act.[9]

---

[9] Judge Matsumoto's decision in Gomez recognizes that "it is likely more difficult to obtain evidence relevant to the enhanced statutory damages factors in a default judgment action[,]" but ultimately concludes that the plaintiff nevertheless maintains the burden to establish such damages to a "reasonable certainty."   Gomez, 2019 WL 4744229, at *11 (concluding that the absence of many of these factors may

**B. Copyright Act**

**1. Statutory and Enhanced Damages**

Turning to the proper measure of damages for the entity's violation of the Copyright Act, this Court respectfully recommends that plaintiff be awarded $3,000, consisting of $1,500 in statutory damages and $1,500 in enhanced damages.

Under the Copyright Act, a prevailing plaintiff may choose to recover (1) its actual damages or (2) statutory damages of between $750 and $30,000 per infringement, as the Court considers just. See 17 U.S.C. § 504(b), (c)(1). "[W]here the copyright owner sustains the burden of proving, and the court finds, that the infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). When determining whether an award is "just" pursuant to 17 U.S.C. § 504, courts consider factors including (a) "the expenses saved and profits reaped by the defendants in connection with the infringements," (b) "the revenues lost by plaintiff as a result of the defendants' conduct[,]" and (c) "the infringers' state of mind." Premium Sports, Inc. v. Nichols, 3:17-CV-0741 (GTS/DEP), 2018 WL 3574870, at *8 (N.D.N.Y. July 25, 2018) (citation omitted).

Here, plaintiff elects to recover statutory damages. See Compl., *ad damnum clause* ¶ (d). Specifically, plaintiff asks this Court to award "statutory penalties in an amount, in the discretion of this Court against [d]efendants, *jointly and severally*, of up [to] [sic] $30,000.00 pursuant to §504(c)(1)" and "enhanced damages in the amount of $150,000.00 pursuant to §504(c)(2) for their willful violation" of the statute. See id. (emphasis in original). While

_____

reflect the *lack* of any clear financial profit or commercial advantage).

19

"[t]he award of statutory damages under the Communications Act does not preclude recovery

under the Copyright Act[,]" it is "the Court's obligation to enter an award that it 'considers

just[,]'" and "district courts have broad discretion in setting the amount of statutory damages

within the minimum and maximum amounts prescribed by the Copyright Act." Mendes, 2018

WL 2078488, at *10 (citations omitted).[10]

     In the instant case, this Court concludes that awarding the full measure of damages

sought by plaintiff would not be just.   In fact, awarding $180,000 in damages would be

"demonstrably excessive" in light of the $3,700 statutory damages award the Court

recommended pursuant to the Communications Act, and given "the lack of allegations or

evidence of 'substantial unlawful monetary gains by the defendants . . . or any significant actual

damages to the plaintiff.'" Mendes, 2018 WL 2078488, at *10 (quoting HBO v. Champs of New

Haven, Inc., 837 F.Supp. 480, 484 (D. Conn. 1993)).   There appears to be no consensus from

courts in this Circuit as to the amount to award for a willful violation of the Copyright Act when

the plaintiff is to receive a parallel award under the Communications Act.   See, e.g., Levin, 2019

WL 3050852, at *6 (reducing the plaintiff's requested statutory damages award of $35,000 by 80

percent); Mendes, 2018 WL 2078488, at *10 (reducing award of Copyright Act statutory

damages from the demanded $15,000 to $1,000); Maupin, 2018 WL 2417840, at *9 (awarding

$1,500 in statutory damages under the Copyright Act and another $1,500 for the defendants'

---

[10] "A plaintiff seeking compensation for the same injury under different legal theories is . . . only entitled
to one recovery[,]" Levin, 2019 WL 3050852, at *5 (quoting Church & Dwight Co. v. SPD Swiss
Precision Diagnostics GmbH, 14-CV-585 (AJN), 2018 WL 4253181, at *16 (S.D.N.Y. Sept. 5, 2018)),
although "that principle does not directly apply here, given that the Copyright Act and the
Communications Act each 'vindicate [] separate rights, and courts have found it proper to award damages
under both Acts[,]" id. at *6 (quoting Maupin, 2018 WL 2417840, at *8 (citing cases where courts have
awarded damages under both Acts)).

willful behavior); <u>Nichols</u>, 2018 WL 3574870, at *8 (awarding $10,000 in statutory and enhanced damages under 17 U.S.C. § 504).   In the absence of any case law in plaintiff's memorandum of law addressing which approach the undersigned magistrate judge should utilize, the Court, in its discretion, recommends an award of $1,500 in statutory damages under section 504(c)(1), and an award of $1,500 under section 504(c)(2) based upon the corporate defendant's willful behavior.

## C. Fees and Costs

Section 605 also provides for the recovery of litigation costs and reasonable attorneys' fees.   <u>See</u> 47 U.S.C. § 605(e)(3)(B)(iii) (the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees[,] to an aggrieved party who prevails"); <u>see also</u> <u>Sykes</u>, 997 F.2d at 1009.   Plaintiff does not seek attorneys' fees in this case, and therefore, the Court recommends that no such fees be awarded.   <u>See</u> Motion for Attorneys' Fees to be Withdrawn (Oct. 29, 2019), DE #17; Electronic Order Granting Motion for Attorneys' Fees to be Withdrawn (Oct. 29, 2019) ("Plaintiff's fee request is deemed withdrawn.").

Likewise, this Court recommends that the District Court award no investigative fees.   In response to the Court's February 11, 2020 Electronic Order directing plaintiff to provide additional information regarding the amount of time necessary for the investigation, how much the investigators charged per hour, and why the investigators are qualified to demand the requested rate, <u>see</u> 2/11/20 Electronic Order (citation omitted), plaintiff informed the court that it was "withdraw[ing] its request to recover auditing fees in the sum of $750.00[,]" <u>see</u> Lonstein Aff. ¶ 5.

With respect to the remaining litigation costs, plaintiff moves to recover a total of

$857.50. See Attorney's Affidavit in Support of Default and Costs and Fees (May 20, 2019) ("Lonstein Costs & Fees Aff.") ¶ 13, DE #14-3 (requesting $400 in filing fees and $457.50 for service of process). Submitted with plaintiff's attorney's affidavit are invoices from the process servers reflecting the cost of service upon defendants, see Invoice for Personal Service of Brenda C. Rosero (May 20, 2019) ("Personal Service Invoice"), DE #14-4 at ECF p. 1 (Ex. A); Invoice for Corporate Service of Victor Bar & Restaurant d/b/a Victor's Bar & Restaurant (May 20, 2019) ("Corporate Service Invoice"), DE #14-4 at ECF p. 2 (Ex. A).

As an initial matter, because the docket establishes that plaintiff paid the $400 filing fee, see generally Compl., the undersigned recommends that plaintiff be awarded this sum in costs. See J & J Sports Prods., Inc. v. Ahuachapan Corp., 17-CV-01184 (LDH) (PK), 2019 WL 1274693, at *10 (E.D.N.Y. Mar. 20, 2019) (awarding an identical $400 filing fee based on a review of the docket sheet).

Next, plaintiff requests an award of $457.50 for costs associated with service of process. See Lonstein Costs & Fees Aff. ¶ 13. In support of this request, plaintiff submits two invoices from Mountain Support Services: the first memorializes corporate service on Victor's Bar & Restaurant and totals $60.00, while the second inexplicably charged $397.50 for personal service on Rosero. See Corporate Service Invoice; Personal Service Invoice. The amount sought by plaintiff is excessive, as it seeks to recoup service costs associated with individual defendant Rosero, as to whom this Court respectfully recommends that default judgment be denied. See J & J Sports Prods., Inc. v. Sanchez, 06-CV-6066 (ENV) (RER), 2007 WL 9723284, at *4 & n.2 (E.D.N.Y. May 15, 2007) ("Plaintiff seeks to recover the costs of service of process on . . . the two individual defendants [but] there is no basis upon which plaintiff may sue [the individual

defendants] in their individual capacities.   Therefore, I decline to reimburse plaintiff the costs associated with serving these individuals."), adopted, 06-CV-6066 (E.D.N.Y. July 27, 2007), DE #18.[11]   This Court likewise recommends that costs associated with serving individual defendant Rosero be denied; instead, this Court recommends awarding service fees totaling $60, the fee charged for service on Victor's Bar & Restaurant.

For the foregoing reasons, this Court recommends that plaintiff be awarded $460.00 in litigation costs.

**D. Interest**

Plaintiff also seeks "interest" as to its claims under the Communications Act and Copyright Act, see Compl. *ad damnum* ¶¶ (e)-(f).[12]   However, plaintiff does not specify whether it is seeking pre-judgment or post-judgment interest, and plaintiff's motion and supporting memorandum of law make no mention of plaintiff's request for interest.   Regardless, this Court recommends that plaintiff be awarded post-judgment interest but not pre-judgment interest.

Sections 605 and 504 do not provide for awards of pre-judgment interest, although courts have discretion to award such relief even absent explicit statutory authorization when doing so would be "fair, equitable and necessary to compensate the wronged party fully."   Aquarius Fuente De Soda, 2009 WL 3173968, at *10 (Communications Act) (citation omitted); see

---

[11] Even assuming *arguendo* that this Court were to recommend an award of costs for service on Rosero, the recommended award would be greatly reduced.   Plaintiff submits no additional information to explain why the cost to serve Rosero amounted to nearly $400, and therefore the private process server fees "must be within the range of costs that would have been incurred had the United States Marshal Service effected service, which is currently $65 per hour."   Gil v. Frantzis, 17-CV-1520 (ARR) (SJB), 2018 WL 4299987, at *4 (E.D.N.Y. Sept. 10, 2018) (citation omitted).

[12] The *ad damnum* portion of plaintiff's Complaint erroneously includes two sections both labeled "(e)". See Compl. pp. 11-12.

Capitol Records, Inc. v .MP3tunes, LLC, 07cv9931, 2015 WL 13684546, at *4 (S.D.N.Y. Apr.

3, 2015) (Copyright Act) (collecting cases).   That said, "[p]re-judgment interest is generally

awarded only in 'exceptional cases[,]'" Aquarius Fuente De Soda, 2009 WL 3173968, at *10

(citation omitted); see Capitol Records, 2015 WL 13684546, at *4, and plaintiff adduces no

evidence that this case is "exceptional" so as to warrant an award of pre-judgment interest,

particularly on top of an award of enhanced damages under the Copyright Act.

      To the extent that plaintiff also requests post-judgment interest, plaintiff is entitled to

such interest on damages from the date that a final judgment is entered until the date that

defendant pays the judgment in full.   See 28 U.S.C. § 1961(a).   "Post-judgment interest accrues

at the federal statutory rate until the judgment is paid."   Morocho, 2019 WL 1339198, at *7

(citing 28 U.S.C. § 1961(a) and cases).   This Court respectfully recommends that the District

Court award plaintiff post-judgment interest.

## CONCLUSION

      For the foregoing reasons, this Court respectfully recommends that the District Court

grant in part and deny in part plaintiff's Motion for Default Judgment.   Specifically, this Court

recommends that default judgment be entered against defendant Victor's Bar & Restaurant, and

that plaintiff be awarded $6,700 in damages as set forth herein, $460 in costs, plus any post-

judgment interest, but that default judgment as to defendant Rosero be denied and that the claims

against her be dismissed with prejudice.

      Any objections to the recommendations contained herein must be filed with Judge

Matsumoto on or before **March 3, 2020**.   Failure to file objections in a timely manner may

waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(d),

72; <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curium).

The Clerk is requested to enter this Report and Recommendation into the ECF system

and to transmit copies by Federal Express to defendants at the following addresses:

Brenda C. Rosero
1723 Greene Ave., Apt 2L
Ridgewood, NY 11385

Victor Bar & Restaurant Inc. d/b/a Victor's Bar & Restaurant
6701 Forest Ave.
Ridgewood, NY 11385

**SO ORDERED.**

**Dated:     Brooklyn, New York**
**           February 18, 2020**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**